# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| PAMELA C. RECTOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:09cv058 |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Pamela C. Rector ("Rector") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). Rector claims disability from September 15, 2003, due to degenerative joint disease, osteoporosis, fibromyalgia, depression, anxiety and a host of other medical problems. After carefully reviewing the administrative record as a whole, the undersigned finds that the ALJ's findings as to her physical and mental impairments are supported by substantial evidence.

However, the ALJ's analysis at step four of the Commissioner's sequential evaluation process is incomplete. The ALJ concluded that Rector could return to her past relevant work. Both the evidence and the ALJ's factfinding on this issue are so sparse that meaningful judicial review is impossible. As such, the ALJ's conclusion at step four falls short of what is required by Social Security Ruling ("SSR") 82-62. As such, the court is constrained to conclude that this case must be reversed and remanded for a proper assessment of whether Rector's impairments are compatible with the performance of her past relevant work.

# I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the

Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.

2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of

the [ALJ] if they are supported by substantial evidence and were reached through application of

the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585,

589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to

establish that they are supported by substantial evidence, we also must assure that [his] ultimate

conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor

re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial

review of disability cases is limited to determining whether substantial evidence supports the

Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions.

See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when,

considering the record as a whole, it might be deemed adequate to support a conclusion by a

reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be

sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir.

1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v.

Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than

a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by

substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security

benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).

This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an

impairment that meets or equals the requirements of a listed impairment; (4) can return to his or

her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v.

Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir.

2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant

"disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next

step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima

facie case for disability, the burden then shifts to the Commissioner to establish that the claimant

maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education,

work experience, and impairments, to perform alternative work that exists in the local and

national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th

Cir. 1975).

## II

At the time of the ALJ's September 3, 2008 decision in this case, Rector was 55 years old

(Administrative Record, hereinafter "R." 33), and had a ninth or tenth grade education. (R. 85.)

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

Rector's past work included jobs as a food preparation worker, caregiver, flagger and waitress. (R. 173.) Rector tried to work between 2003 and 2006, but was unsuccessful. Rector's application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an ALJ on May 20, 2008, and the ALJ issued his decision on September 3, 2008. (R. 76-108, 15-31.) In determining whether Rector was disabled under the Act, the ALJ found that her degenerative joint disease, osteoporosis, and fibromyalgia were severe (R. 18), but found that she retained the RFC to perform a less than full range of medium work. (R. 28.) As to her claimed mental impairments resulting from anxiety and depression, the ALJ found that Rector only had mild limitations in the functional areas of social functioning and concentration and persistence or pace, and did not find her mental impairments to be severe. (R. 25-27.) At step four of the sequential evaluation process, the ALJ accepted the testimony of a vocational expert ("VE") and concluded that Rector could perform her unskilled light and medium past relevant work as personal care attendant, stocker, waitress, flagger and dietary aide as that work is actually performed. (R. 31.)

Rector submitted certain additional evidence to the Appeals Council (R. 32-74), which took action remarkably quickly, denying her request for review on December 31, 2008. (R. l.) This appeal was filed in federal court on February 26, 2009, and the case was transferred to the undersigned on September 24, 2009. Both parties subsequently moved for summary judgment, and a hearing was conducted on December 15, 2009.

Rector attaches two exhibits to her motion for summary judgment. Exhibit A is an opinion form entitled "Medical Report for General Relief, Medicaid, and Temporary Assistance for Needy Families," completed by Dr. Joseph Lemmer, Rector's treating rheumatologist, on August 22, 2007. Dr. Lemmer opines in this TANF form that Rector's fibromyalgia, anxiety and

4

depression rendered her unable to work or severely limited her capacity for self-support for 30 days. This medical opinion was apparently submitted to the Commissioner under cover dated October 22, 2007, but it never made it into the administrative record. As such, it was not considered by the ALJ in his decision. Exhibit B is a Fibromyalgia Residual Functional Capacity Questionnaire completed by Dr. Lemmer dated March 26, 2009, and an addendum thereto dated October 13, 2009. Dr. Lemmer's responses on the Fibromyalgia RFC Questionnaire suggest that Rector's impairments are disabling, and in the addendum, Dr. Lemmer states the limitations he identified on the March 26, 2009 form relate back to when he first saw Rector on June 21, 2006.

The case is now ripe for consideration on the cross motions for summary judgment. After reviewing the administrative transcript, considering the briefs and oral argument, as well as the standard of review in social security disability appeals, the undersigned finds that the decision of the Commissioner must be reversed and the case remanded to the Commissioner for further administrative development.

## III

Rector's medical history is long and remarkable for numerous visits to a variety of hospital emergency rooms and other providers for claimed contusions, sprains and strains resulting from falls and myriad other injuries. The sheer number of visits to hospital emergency rooms for claimed falls and other acute injuries is noteworthy and is summarized as follows:

- 11/24/00   Mont. Reg. Hosp. ER   Fall on slippery porch. Left wrist pain.

- 01/10/01   Carilion Family Med.   Left wrist pain. Denies specific injury.

| | | | |
|---|---|---|---|
| • | 01/11/01 | Mont. Reg. Hosp. ER | Body twisted while lifting heavy door at work. Low back and left arm pain. |
| • | 02/19/01 | Mont. Reg. Hosp. ER | Fall on steps. Arm and back pain. While at hospital, falls off hospital bed and hurts leg. |
| • | 03/19/01 | Mont. Reg. Hosp. ER | Injured right hand cranking up pop-up camper. |
| • | 04/04/01 | Mont. Reg. Hosp. ER | Twisted right ankle. |
| • | 06/18/01 | Mont. Reg. Hosp. ER | Accidentally struck by another person in swimming pool. Back, neck pain. |
| • | 12/13/01 | Carilion Family Med. | Conveyor belt broke, jarring and causing Rector to drop a box she was carrying. Neck pain. |
| • | 12/16/01 | Mont. Reg. Hosp. ER | Fell onto knee while lifting heavy box. Low back pain. |
| • | 02/16/02 | Carilion Family Med. | Slammed left hand in screen door. |
| • | 06/19/02 | Mont. Reg. Hosp. ER | Fell on shoulder. |
| • | 07/13/02 | Carilion Family Med. | Chair fell on foot. Right foot pain. |
| • | 07/21/02 | Carilion NRV ER | Turned in dining hall. Left rib pain. |
| • | 08/05/02 | Mont. Reg. Hosp. ER | Twisted right knee. |
| • | 04/10/03 | Carilion NRV ER | Tangled in dog chain. Right leg pain. |
| • | 06/25/03 | Carilion NRV ER | Slipped in kiddie pool. Knee injury and pain. |
| • | 11/16/03 | Carilion NRV ER | Fell off a truck. Neck pain. |
| • | 12/02/03 | Carilion NRV ER | Fell getting out of bathtub. Finger pain. |

| | | | |
|---|---|---|---|
| • | 12/06/03 | Carilion NRV ER | Fell again.  Hand pain. |
| • | 10/18/04 | Carilion Family Med. | Turned the wrong way.  Shoulder blade and rib pain. |
| • | 10/28/04 | Carilion Family Med. | Slipped off step.  Right foot pain. Dropped a case of soda on foot a couple of weeks ago. |
| • | 03/20/05 | Carilion NRV ER | Moved large TV. Back pain.  Took last Lortab last night. |
| • | 05/02/05 | Mont. Reg. Hosp. | Fall.  Right hip pain. |
| • | 05/07/05 | Carilion NRV ER | Hit back on vanity.  Lumbar and right rib pain. |
| • | 08/28/05 | Carilion NRV ER | Flipped to ground by child.  Neck and shoulder blade pain.  Ran out of Lortab two days ago. |
| • | 10/25/05 | Carilion Family Med. | Fell getting out of tub.  Right pelvic pain.  Requests Lortab refill. |
| • | 12/17/05 | Carilion NRV ER | Fall one week ago.  Back, right wrist and left leg pain. |
| • | 02/22/06 | Mont. Reg. Hosp. ER | Fall.  Right shoulder pain. |
| • | 03/18/06 | Mont. Reg. Hosp. ER | Twisted right ankle 3 days ago. |
| • | 05/17/06 | Mont. Reg. Hosp. ER | Cleaning yesterday and injured back. |
| • | 05/26/06 | Mont. Reg. Hosp. ER | Moving furniture.  Increased back pain. |
| • | 10/15/06 | Mont. Reg. Hosp. ER | Box fell on back. |
| • | 01/01/07 | Carilion NRV ER | Fall on Thanksgiving.  Knee, toe pain. |
| • | 01/30/07 | Carilion NRV ER | Crawled under house trailer.  Back, hip pain. |

| | | | |
|---|---|---|---|
| • | 02/06/07 | Carilion NRV ER | Fall striking chest wall. Chest pain. |
| • | 04/26/07 | Balt. Wash. MC ER | Long bus ride, heavy lifting. Back pain. |
| • | 06/15/07 | Carilion NRV ER | Requests pain meds for headache. |
| • | 07/31/07 | Carilion NRV ER | Requests pain meds for back. |
| • | 12/26/07 | Carilion NRV ER | Right arm injury 4 days ago. |
| • | 02/15/08 | Mont. Reg. Hosp. ER | "Overdid it" shopping. Back and shoulder pain. |
| • | 04/06/08 | Mont. Reg. Hosp. ER | Packing boxes. Shoulder blade pain. |

Over the years, Rector has been prescribed narcotic pain medications for such injuries and other complaints frequently and repeatedly. (See, e.g., R. 272, 368, 375, 397, 402, 406, 412, 434, 463, 466, 471, 480, 484, 487, 490, 499, 521, 568, 584, 588, 592, 596, 602, 625, 631, 671, 672, 686, 694, 759, 1016.) It is clear from a page by page review of this voluminous medical record that Rector has been prescribed Lortab and other narcotic pain medications many, many, many times for many, many, many complaints and that she has sought such medications from multiple providers. Indeed, a number of the medical records suggest that Rector's visit was attributable to the fact that she had recently run out of narcotic pain medication just prior to her emergency room visit. (See, e.g., R. 428 ("Ran out of Lortab 2 days ago."); R. 443 ("Just took last Lortab 7.5 last night now out."); R. 579 ("Pt. is out of Lortabs."); R. 1119 ("Pt. reports that she is out of her medications.").) Again, after reviewing each page of the three volumes of medical records, the court is struck by the fact that most of Rector's many medical visits complaining of pain due to various mishaps have one common denominator – the prescription of narcotic pain medications.

Indeed, certain medical records reflect providers' concern with prescribing Rector narcotic pain medications on an ongoing basis. On January 10, 2001, Rector claimed severe left wrist pain but denied any specific injury to the wrist.[2] Her treating family doctor noted that she was insistent that she needed pain medication for this, which the doctor stated needed to be watched. (R. 390.) In December, 2001, Rector was seen for minor neck sprain/strain. Again, her doctor "told her that I was not willing to [prescribe] large amount of narcotic pain meds, and that this should not be used chronically for this acute problem." (R. 374.) Concern over her chronic use of Lortab was noted in the record of her visit to a nurse practitioner on December 21, 2005. (R. 401.) On December 17, 2005, Rector sought treatment at the Carilion New River Valley Medical Center Emergency Room for a fall a week before. The nursing note speaks volumes as to Rector's situation. After noting that Rector was given a 10 m.g. morphine injection, the note recites "immediately after needle came out of buttocks [Rector] stopped crying and was asking about the bracelet I had on." (R. 433.) A medical history dated September 12, 2006 indicated that she was "fired from the office of Dr. Lambert." (R. 418.) On January 30, 2007, Rector was told that she "should be seeing one physician for pain medications." (R. 760.) The Emergency Room Report dated February 15, 2008, states, "[t]he patient has requested narcotics repeatedly, but this is not necessarily indicated at the present time. Urine drug screen is positive for benzodiazepines and opiates, which matches her current drug profile." (R. 1186.)

Further, the vast majority of the objective diagnostic tests done after these visits to the various hospital emergency departments and myriad complaints of pain consistently revealed no

---

[2] This denial is peculiar as Rector had sought treatment for this same wrist at a different provider, Montgomery Regional Hospital Emergency Room, claiming she hurt it in a fall six weeks earlier. (R. 624-27.)

acute findings or findings within normal limits. (See, e.g., R. 251, 252, 254, 275, 316, 435, 439, 441, 454-56, 472, 522, 570, 600, 605, 627, 639, 647, 649, 651, 655, 674, 697, 702, 750, 751, 752, 757, 770, 797, 973-74, 981, 986, 992, 1013, 1062, 1115, 1152, 1153, 1186.) Having reviewed each page of the medical record, the court is struck by the sheer number of diagnostic clinical tests in the record objectively demonstrating normal findings.

The administrative record contains no opinions from any treating source indicating that Rector was physically unable to work.[3] There are two assessments of Rector's physical RFC by state agency physicians completed in April and August, 2007. (R. 802-09, 877-884.) On April 23, 2007, Dr. Robert McGuffin concluded that Rector's complaints were only partially credible and that she retained the RFC to do medium work, with occasional limitations on crawling, kneeling and climbing ramps and stairs. Dr. McGuffin precluded any work involving climbing ladders, ropes or scaffolds. (R. 804.) This RFC assessment was reconsidered and confirmed by Dr. Joseph Duckwall on August 23, 2007. Given the absence of any conflicting opinion evidence in the administrative record and questions surrounding Rector's credibility stemming from her repeated requests for narcotic pain medications, there is no reason to disturb the ALJ's physical RFC findings.

## IV

The first medical record reflecting mental issues dates from 2001; this record documents Rector's complaints of panic attacks and claimed history of depression. (R. 382.) Rector was treated with Xanax, an anti-anxiety medication. Over the years, Rector sporadically complained

---

[3] As noted previously, Exhibits A and B to Rector's brief do contain such opinions, but they were not submitted to the Commissioner during the administrative process.

of anxiety, depression and panic attacks and was prescribed a variety of medications by primary care providers.

Rector was first seen by a mental health specialist, Dr. David Downs, in psychiatric consultation on September 12, 2006. Rector had been admitted to the emergency room at Carilion New River Valley Medical Center with complaints of chest pain. Dr. Downs diagnosed Rector with the following clinical disorders: dysthmic disorder, generalized anxiety disorder and severe psychosocial problems. Dr. Downs' diagnosis noted that she needed to be evaluated further to rule out moderate to severe recurrent major depressive disorder and frank personality disorder. Dr. Downs assessed her Global Assessment of Functioning at 55-60 at best.[4] Dr. Downs did not believe that Rector should be hospitalized but said that she was in need of help from social services. Dr. Downs explained that "[s]he very definitely does have a very lengthy history of dysphoric to frankly depressed mood and severe anxiety, with various vegetative symptoms." (R. 542.) These symptoms included "somatic preoccupation and rumination which is undoubtedly all providing quite a drive and emphatic increase in her physical discomfort and presentation." (R. 542.) Dr. Downs found no psychosis, but noted that "her rather severe psychosocial stressors including more chronic and acute ones and including having very little in the way of resources necessary to provide for daily living needs are driving things even further. The patient is low average in intellectual ability and clearly has some difficulty with problem solving processing, and is quite dependent. She has very poor coping skills." (R. 542.)

---

[4] The Global Assessment of Functioning, or GAF, scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic And Statistical Manual Of Mental Disorders Fourth Edition 32 (American Psychiatric Association 1994) [hereinafter DSM-IV]. A GAF of **51-60** indicates than an individual has "[m]oderate symptoms . . . OR moderate difficulty in social, occupational or school functioning . . ." Id.

Thereafter, Rector was seen by consulting psychiatrist Nicholas A. Zeltvay of New River

Valley Community Services every few months over the next couple of years. At his initial

evaluation on October 11, 2006, Dr. Zeltvay diagnosed Rector with panic disorder, recurrent

major depression, and agoraphobia, and he noted further evaluation was needed to rule out PTSD

spectrum disorder. (R. 552.) Dr. Zeltvay identified "lack of psychosocial support, lack of the

patient's own housing, severe dependency issues, which foster traumatic relationships,"

(R. 552), as being psychosocial and environmental stressors relevant to Rector's condition. Dr.

Zeltvay assessed Rector's Global Assessment of Functioning at 55, and began managing her

psychiatric medications. On her next few visits, November 15, 2006 and January 17, 2007, Dr.

Zeltvay noted improvement with her depression and panic disorder. (R. 546, 845.) On March

19, 2007, Dr. Zeltvay noted that Rector "appears to be near or at her psychiatric baseline."

(R. 844.) During a May 14, 2007 visit, Rector reported that she was having a difficult time

following a change in one of her medications and problems with her marriage. (R. 840.) Rector

reported on July 2, 2007 some improvement and stability in her mood. (R. 1245.) Dr. Zeltvay

met only briefly with Rector on October 1, 2007, at which time she reported that she was still

having some anxiety and occasional breakthrough panic attacks. (R. 1242.) On December 3,

2007, Dr. Zeltvay described Rector as being in a "semi-crisis state." (R. 1240.) Dr. Zeltvay

diagnosed her with "major depression, generalized anxiety, panic disorder by history, phase of

life circumstances with marital issues predominating." (R. 1240.) At her January 28, 2008 visit,

Rector was more stable. Certain of his insights on that visit are worth noting from a functional

standpoint. Dr. Zeltvay stated, "I would like to see whether or not Pamela could maybe make an

effort at working which may actually help improve her self esteem and improve her overall

functioning. At this point, as well as she is doing, I am not prepared to offer psychiatric

12

disability status for her." (R. 73.) On subsequent visits during the summer of 2008, Rector was

seen on a "semi-emergent basis" due to her husband leaving her. (R. 71.) Subsequent visits

noted that she was now homeless. (R. 65-66.)

At some length, the ALJ considered Rector's claimed mental impairments and concluded

that as they did not cause any more than a mild functional limitation in her ability to perform

basic mental work activity, they were not considered to be severe. (R. 25-27.) Review of the

ALJ's consideration of the factors set forth in 20 C.F.R. § 404.1520a confirms that the ALJ's

conclusion is consistent with Dr. Zeltvay's treatment notes, particularly his January 28, 2008

note containing a functional assessment, and is supported by substantial evidence.

There are no medical opinions in the administrative record indicating that Rector's

anxiety and depression, in and of itself, were disabling, but the record does contain two

conflicting Psychiatric Review Techniques completed by state agency psychologists. On April

25, 2007, Dr. Howard S. Leizer opined that Rector had affective disorders, anxiety-related

disorders and personality disorders which did not rise to the listing level and resulted in

moderate restriction in activities of daily living, moderate difficulties in maintaining social

functioning, moderate difficulties in maintaining concentration, persistence or pace, with one or

two episodes of decompensation, each of extended duration. (R. 835.) Dr. Howard Leizer

concluded that Rector's "allegations are partially credible, claimant does appear to have limited

stress tolerance and problems with pain and associated depression and anxiety. However, she

appears able to engage in simple, non-stressful SGA [Substantial Gainful Activity] level

activity." (R. 839.)

Four months later, on August 23, 2007, Dr. Joseph I. Leizer, also a state agency

psychologist,[5] concluded on reconsideration that Rector's mental impairments were not severe

and that she had only a mild restriction in activities of daily living, mild difficulties in

maintaining social functioning, mild difficulties in maintaining concentration, persistence or

pace, and no repeated episodes of decompensation. (R. 861, 871.) It appears from the decision

note appended to his assessment that Dr. Joseph Leizer reviewed three recent medical records

and determined that Rector's condition had improved with medication. Dr. Joseph Leizer

concluded as follows: "Consequently, at the present time, the MER [Medical Evidence of

Record] fails to establish that the claimant would be unable to perform the mental demands of all

levels . . . of work, with the result that her disability allegations of being unable to work due to

anxiety, panic and depression are not fully credible. Further, there is no support for her

allegations of having a diagnosis of PTSD." (R. 876.)

Considering this opinion evidence, the ALJ accorded Dr. Joseph Leizer's reconsideration

great weight. The ALJ concluded that Rector's "current problem is situational depression

caused by her husband leaving with the resultant loss of her home. Her mental depressive

condition has not been severe enough to require hospitalization and should not last a year as a

severe impairment." (R. 30.) On balance, substantial evidence, in particular, Dr. Zeltvay's

January 28, 2008 note, supports the ALJ's conclusion that Rector's claimed mental impairments

would not provide more than a minimal limitation in her ability to do basic work activities, and

thus were not severe.

---

[5] The Commissioner argues on brief that the state agency psychologist "revised his assessment" and determined that Rector's mental limitations were only mild. Defendant's Memorandum in Support of Motion for Summary Judgment at 12. (Dkt. No 14.) That is not correct, as the Commissioner fails to distinguish between the assessment done by Dr. Howard S. Leizer in April, 2007, (R. 825-39), and the reconsideration done by Dr. Joseph I. Leizer in August, 2007. (R. 861-76.) These are two different psychologists, both of whom practice in Martinsville, Virginia.

# V

While the court is convinced that the ALJ correctly assessed Rector's claimed physical and mental impairments based on the evidence before him, a question remains as to the sufficiency of the ALJ's step four analysis.

At the administrative hearing, the ALJ called a VE as a witness, but only asked him one question. The entire examination of the VE is as follows:

> Q    May I have the work history of the claimant?
>
> A    Sure. Her past relevant work as I understand it consists primarily of employment as a personal care attendant, medium, unskilled. Her work as a flagger, light, unskilled. Her work as a dietary aid, light, unskilled. Her work as a stocker, medium, unskilled. And her work as a waitress, she's described it at the medium exertional level, it's typically performed at the light exertional level, unskilled, medium. Where overall all of her work clearly has been unskilled.
>
> Q    You said that was a personal attendant?
>
> A    Personal care.
>
> ALJ:    Care attendant, okay. Stipulate as to the work history?
>
> ATTY: Yes, Your Honor.
>
> ALJ:    Okay. Do you have any questions of the Vocational Expert?
>
> ATTY: No, sir.

(R. 106-07.)

From review of this evidence, it is clear that the ALJ asked only one question – what was Rector's work history? – which was answered cursorily. No questions were asked of the VE as to whether a person with Rector's impairments could perform any of this work. No other evidence was requested from or provided by the VE.

15

Based solely on this sparse record, the ALJ concluded that "[t]he claimant is capable of performing past relevant work as a waitress, a companion, and a flagger. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (R. 31.) Other than summarizing the VE's answer to the lone question posed to him, the ALJ's complete step four analysis consists of the following two sentences:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as it is actually performed. The vocational expert's testimony is accepted because of his expert training, knowledge and experience.

(R. 31.)

Social Security Ruling 82-62 states the policy and explains the procedure for determining a disability claimant's ability to do past relevant work. An ALJ must make findings of fact as to the individual's RFC, the physical and mental demands of the past job occupation, and whether the individual's RFC would permit a return to her past job or occupation. In making this determination an ALJ should carefully consider the following evidence:

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements;

> (2) medical evidence establishing how the impairment limits the ability to meet the physical and mental requirements of the work; and

> (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62. The decision of the ALJ must "follow an orderly pattern and show clearly how specific evidence leads to a conclusion." SSR 82-62. "In addition, for a claim involving a

mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62. Plainly, neither the VE's testimony nor the ALJ's decision contains this level of specificity regarding the jobs listed. In fact, the only details provided are that the jobs are unskilled and either at the light or medium exertional levels. (R. 106.)

Here, the ALJ failed to develop the factual basis for determining that Rector could return to her previous work. The ALJ's conclusory determination that Rector could return to her past relevant work is devoid of the specificity and careful analysis required by SSR 82-62. While there was VE testimony briefly categorizing the work done by Rector in terms of its physical exertional levels, no effort was made to assess the mental demands of such work, nor was there any question posed to the VE as to whether a person with Rector's impairments could return to such work. Given the absence of any such evidence, the ALJ's purported reliance on the VE's nonexistent testimony is plainly insufficient under SSR 82-62, precludes meaningful judicial review, and does not rise to the level of substantial evidence.

## VI

Considering the evidence in the administrative record as a whole, the court finds that the Commissioner's assessment of Rector's physical and mental impairments to be supported by substantial evidence. Indeed, it may well be at the end of the day that the Commissioner again concludes that Rector has not met her burden of proving she is disabled from all work. However, the court is constrained to conclude that the ALJ failed to sufficiently develop the factual record at step four of the analysis under the dictates of SSR 82-62 to allow meaningful judicial review.

This failure constitutes an error of law and necessitates remand for further development of whether Rector's impairments preclude her from returning to her past relevant work. As such, Rector's motion for summary judgment must be granted. On remand, the Commissioner is further directed to consider the treating source opinions of Dr. Lemmer attached as Exhibit A and B to Rector's summary judgment brief.

The Clerk of Court hereby is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered: May 11, 2010.


*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States Magistrate Judge